**Forest Britt PETER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18546.**

United States Court of Appeals
Ninth Circuit.

Oct. 30, 1963.

Rehearing Denied Dec. 10, 1963.

———◆———

Neyhart & Grodin and Richard R. Heath, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and James F. Hewitt, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims,* and HAMLIN and

BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from a conviction of violation of section 12(a) of the Universal Military Training and Service Act, 62 Stat. 622 (1948), 50 U.S.C.App., § 462(a) (1958). Appellant, Forest Britt Peter, having waived a jury trial, was found guilty of failure to submit to induction into the armed forces by the United States District Court for the Northern District of California, and was committed to the custody of the Attorney General for six months. Jurisdiction of this court is based on 28 U.S.C. § 1291 (1958).

On July 10, 1956, appellant registered for the Selective Service System with Local Board No. 53 in Hayward, California. On May 27, 1957, he completed and returned the standard classification questionnaire. He did not sign section VII of that questionnaire, relating to conscientious objector status, but submitted with the questionnaire a quotation from a poem which expressed opposition to war and a statement of his own concurring with the quotation.[1] On March 10, 1958, the local board received from him a completed SSS Form 150 relating to conscientious objector status. In answer to question 1 in series II, "Do you believe in a Supreme Being?," he answered, "It depends on the definition. See 2 below." Question 2 of the series inquires as to the nature and quality of the belief, question 3 as to its source, and question 5 as to the circumstances, if any, in which force could be used; appellant referred to a separate sheet on which these questions were answered.[2]

* Sitting by designation.

1. " ' * * * so in plain English:
I am opposed to all war.
I don't believe human beings should kill each other.
I am opposed to all violence * * * for whatever reason.
I believe that wars will only end when men refuse to murder one another–for whatever reason.
I believe these things as a man and as a revolutionist. For I believe wars will only end when the present murderous forms of society are allowed to die——and all men are at last permitted to live together as brothers.'
        "—from An Astonished Eye
            Looks out of the Air
    "–by Kenneth Patchen
"I concur with the statements of Mr. Patchen that are listed above.
        "FOREST BRITT PETER
            "May 22, 1957
        "Portland
            Oregon"

2. "Series 11.—Religious Training and Beliefs
"2. Since human life is for me a final value, I consider it a violation of moral law to take human life. I think I have reached this conviction out of my reading of such writings as those of Blake (christian mystic), Emerson, Whitman, and more modern poets who have touched on the question.
"I consider this belief to be superior to my obligation to the state.
"In so far as this conviction is religious, it has been best described by Rev. John Haynes Holmes as follows: 'Religion is the consciousness of some power manifest in nature which helps man in the ordering of his life in harmony with its demands * * * (it) is the supreme expression of human nature; it is man thinking his highest, feeling his deepest, and living his best.'
"3. I would say that the source of my conviction concerning the sacredness of human life and the human spirit has been my experience and study in our democratic american culture, with its values derived from the western religious and philosophical tradition. As I have indicated above, I feel that I have learned of the values of this tradition through personal reading and meditation rather than through experience in any organized groups.
"6. The use of violence (physical force) comprises the ends one seeks in action. I consider war to be the greatest example of this. The use of non-violence in the freeing of India and the Montgomery bus strike is an example of the kind of force I do believe in.
        "FOREST BRITT PETER
            "3/10/58"

He stated he was not a member of a religious sect or organization.

On July 10, 1959, the local board by a 2-to-0 vote classified appellant I-A. On August 3, 1959, appellant appeared at a hearing before the local board where he substantially reiterated the views previously stated. The local board determined by a 2-to-0 vote not to open the case, and a notice of classification was mailed to appellant on August 4. On August 7, appellant wrote a letter to the board which reads as follows:

"Dear Sirs,
"Thank you for your time the other night at the hearing. I'm sorry you were unable to classify me as a Conscientious Objector.
"The decision however, was not a surprise considering my lack of 'proof' and your lack of moral courage.
"I just hope the war you support won't kill us all in the next few years.
"To the future,
"Forest Britt Peter."

The clerk of the local board interpreted this letter as a request for appeal and forwarded the file to the appeal board on September 9. On October 8, the Appeal Board for the Northern District of California "tentatively determined that the registrant should not be classified in Class I-O or in a lower class," and forwarded the file to the Justice Department for investigation and hearing under section 6(j) of the Universal Military Training and Service Act, 62 Stat. 609 (1948), as amended, 50 U.S.C. App., § 456(j) (1958). On July 29, 1960, the Conscientious Objector Section

of the Justice Department recommended to the appeal board that appellant's claim not be sustained, and a copy was mailed to appellant together with a letter advising him that he had thirty days within which to reply to the recommendation.[3] Appellant's reply was a long letter alleging inaccuracies and irrelevancies in the hearing officer's report together with a lengthy dissertation on his beliefs, their nature, quality, and source. On November 18, 1960, the appeal board by a 5-to-0 vote continued the classification of I-A.

On July 20, 1961, appellant was ordered to report for a preinduction physical examination scheduled for August 30. Appellant replied with a letter dated August 15 which reads as follows:

"Dear Sirs,
"I will not appear for my Armed Forces Physical Examination August 30th, In accordance with my previously stated views and beliefs as a conscientious objector."

Appellant also forwarded a letter dated August 15, 1961.[4] Appellant was then ordered to report on November 22 for induction as a delinquent. He replied with a letter to the local board dated October 16 as follows:

"I recently received from you a notice of delinquency for my failure to report for an Armed Forces Physical Examination on August 30, 1961. I do not consider myself delinquent. I remain as before, a conscientious objector to war and to all military institutions. I am a proponent of non violent action and reaction with other human beings, and I could not and will not partici-

3. "The Hearing Officer reported that he told the registrant that belief in a Supreme Being was required and that at no time did the registrant suggest that he had a belief in a Supreme Being; that in answering the Hearing Officer's question, 'Are you prayerful?' the registrant had stated, 'No, I don't pray.' "
  * * *
  "The Hearing Officer concluded that the registrant evidenced neither religious

training and belief nor belief in a Supreme Being as defined in the Military Training and Service Act and the Hearing Officer recommended that the claim of the registrant, based upon grounds of conscientious objection, be not sustained."

4. The letter was almost an exact copy of the letter set out in note 1, *supra.*

pate in a physical examination whose purpose is to define my fitness for service in the *Armed* Forces.

"Once again,

"Forest Britt Peter."

On advice of counsel, however, appellant reported to the Armed Forces Recruiting Station in Oakland, California, on the appointed day, and there refused to be processed for induction. He was not given a physical examination at that time. Appellant on later dates submitted letters to the local board, the California State Headquarters, and the Director of the Selective Service System, General Hershey, requesting a physical examination, with the avowed purpose of avoiding the effect of the doctrine of exhaustion of administrative remedies. These requests were denied.

On September 26, 1962, appellant was indicted for refusing to submit to induction and was tried and found guilty by the district court without opinion on November 16, 1962.

The issues in this case are: (1) Whether appellant qualifies as a conscientious objector; and (2) whether appellant was precluded from raising the defense because he failed to exhaust his administrative remedies.

In Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427–428, 90 L.Ed. 567 (1946), the Supreme Court held that "the decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." Appellant contends that there was no basis in fact for the classification given him on the grounds that there is no evidence in the record that anyone at any time questioned the sincerity of his beliefs. The government contends that the local board and the Justice Department's hearing officer had the opportunity to observe the demeanor and attitude of the appellant in his appearances before them and that their refusals to classify him as a conscientious objector show some doubt as to his sincerity. There is some merit in the government's contention. However, even assuming that appellant was absolutely sincere, the record demonstrates that there was a basis in fact for the board's determination that he did not meet the statutory requirements for a conscientious objector.[5]

Appellant concedes that exemption from service as a conscientious objector is not a matter of constitutional right but of legislative grace. To qualify for such a classification, a registrant must meet the standards set forth by Congress in section 6(j) of the Universal Military Training and Service Act, 62 Stat. 609 (1948), as amended, 50 U.S.C.App., § 456(j) (1958):

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, *by reason of religious training and belief,* is conscientiously opposed to participation in war in any form. *Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code.*" (Emphasis added.)

Appellant contends that he meets the definition. His argument is that his beliefs have a religious foundation. In support of this, he stated at his trial:

"A. I think my actions are probably motivated most thoroughly by a feeling of relationship and love towards other human beings and

---

5. Appellant's contention that this case is "on all fours" with Parr v. United States, 272 F.2d 416 (9th Cir. 1959), is in error.
The facts in the *Parr* case are entirely different.

other living objects in the world, and in seeing these other living objects. I can narrow it down closer; I can define it as a belief in the mystery of the heart of them, the essence of being alive, and my respecting and loving this livingness in other objects and human beings."

"Q. Well, now, in relation to the question of a Supreme Being——"

"A. I suppose you could call that a belief in the Supreme Being or God. These just do not happen to be the words I use."

In Berman v. United States, 156 F.2d 377, 380 (9th Cir.), cert. denied, 329 U.S. 795, 67 S.Ct. 480, 91 L.Ed. 680 (1946), this court defined the standard set forth in the predecessor to this act as follows: "It is our opinion that the expression 'by reason of religious training and belief' is plain language, and was written into the statute for the specific purpose of distinguishing between a conscientious social belief, or a sincere devotion to a high moralistic philosophy, and one based upon an individual's belief in *his responsibility to an authority higher and beyond any worldly one.*" (Emphasis added.) The court also quoted from United States v. Macintosh, 283 U.S. 605, 633–34, 51 S.Ct. 570, 578–79, 75 L.Ed. 1302 (1931) (Hughes, C.J., dissenting), that "the essence of religion is belief in a *relation to God involving duties superior* to those arising from any human relation." (Emphasis added.) It is true that when the *Berman* case was decided, there was no sentence in the statute defining "religious training and belief." However, the present statute does contain such a definition, and it is by no means repugnant to the *Berman* definition. In fact, it adopts almost verbatim the wording from Mr. Chief Justice Hughes's dissent in *Macintosh* which the *Berman* court quoted with approval, changing only the word "God" to "a Supreme Being." In George v. United States, 196 F.2d 445, 451 (9th Cir.), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952),

this court in reaffirming the definition previously used stated that "it is evident that the definition which the Congress introduced into the 1948 Amendment comports with the spirit in which 'Religion' is understood generally, and the manner in which it has been defined by the courts. It is couched in terms of the relationship of the individual to a Supreme Being, and comports with the standard or accepted understanding of the meaning of 'Religion' in American society." Appellant has made no good argument as to why the statutory definition should be overruled, and, indeed, it is far beyond the power of this court to change the definition placed in the act by Congress.

■■ It is significant that nowhere in the record of the proceedings before the administrative bodies did appellant manifest clearly and unequivocally a belief in a Supreme Being to Whom he owed obedience. When asked directly, "Do you believe in a Supreme Being?," he answered, "It depends on the definition." Later he referred to the act of killing as "a violation of moral law." Determination of his meaning and of his demeanor and attitude were functions of the administrative bodies, and it cannot be said that they were unreasonable in their determination. Such statements were quite consistent with "a merely personal moral code," which is expressly excluded by Congress as a basis for classification as a conscientious objector. As was stated in the *Berman* case, 156 F.2d at 381, "There are those who have a philosophy of life, and who live up to it. There is evidence that this is so in regard to appellant. However, no matter how pure and admirable his standard may be, and no matter how devotedly he adheres to it, his philosophy and morals and social policy without the concept of deity cannot be said to be religion in the sense of that term as it is used in the statute." It was not until his trial for violation of the act that appellant reluctantly and grudgingly stated that his beliefs might be construed as a belief in a Supreme Being.

We hold there was ample basis in fact for the determination by the selective service board that appellant's claim for exemption did not come within the language of the statute.[6]

Judgment affirmed.

S. Gunter Toney, Tallahassee, Fla., for appellant.

Clinton Ashmore, U. S. Atty., Richard W. Ervin, III, Stewart J. Carrouth, Asst. U. S. Attys., Tallahassee, Fla., for appellee.

Before RIVES and JONES, Circuit Judges, and DAWKINS, District Judge.

6. By reason of our holding against appellant on this issue it is not necessary for us to consider the issue of whether or not he failed to exhaust his administrative remedies.